|                           |   |                          |
|---------------------------|---|--------------------------|
| UNITED STATES DISTRICT COURT | | EASTERN DISTRICT OF TEXAS |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:12-CR-252(1) |
| | § | |
| MIGUEL ANGEL ALFARO | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Miguel Angel Alfaro's ("Alfaro") Emergency Motion for Compassionate Release (#798), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(a) due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government opposes the motion (#801). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.   Background

On August 13, 2013, Alfaro was named in a one-count Information filed in the Eastern District of Texas charging him with Conspiracy to Distribute and Possess With the Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 846. On August 14, 2013, Alfaro pleaded guilty to the charged offense pursuant to a non-binding plea agreement. Subsequently, on April 16, 2014, the court sentenced Alfaro to 200 months' imprisonment, to be followed by a 3-year term of supervised release. Alfaro is currently housed at correctional institution Giles W. Dalby ("CI Giles W. Dalby"), located in Post, Texas. His projected release date is November 27, 2026.

II. Analysis

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

A. Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897,

2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release

3

motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, on December 4, 2020, Alfaro submitted a request for compassionate release to the warden of CI Giles W. Dalby on the same grounds as his present motion. Warden M. Friend denied Alfaro's request on December 16, 2020. Although Alfaro complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

B. Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id*. at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id*. at 392. Third, the defendant "must convince the district judge to exercise

discretion to grant the motion after considering the § 3553(a) factors."[1]  *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2] However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3] Consequently, the Fifth Circuit has held that when

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018. The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum. The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a). At present, the Commission has only one voting member.

a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392. Nevertheless, while recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

    C.    <u>Medical Condition</u>

In the instant motion, Alfaro contends that he is eligible for compassionate release due to his medical condition, specifically, that he suffers from diabetes, hypertension, "kidney problem (cancer)," prostate enlargement, small bowel obstruction, "HTC/Cardiac," and renal cancer. Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within

the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

When interviewed in connection with his Presentence Investigation Report ("PSR"), prepared on December 23, 2013, and revised on February 26, 2014, Alfaro reported that he was diagnosed with high cholesterol and diabetes in July 2012; he also had acid reflux. At the time, Alfaro was prescribed metformin to control his diabetes and zantac for his acid reflux. According to Alfaro's BOP medical records, he has been diagnosed with renal cell carcinoma (kidney cancer), hypertension (high blood pressure), Type 2 diabetes, hyperlipidemia (high cholesterol), and obesity. He is currently prescribed aspirin, glipizide to manage his diabetes, and lisinopril to treat his high blood pressure.

A medical record dated March 4, 2021, reflects that Alfaro's diabetes is considered "mild" and is controlled; further, his hypertension is also controlled. Alfaro's most recent blood pressure readings, 126/72 on April 16, 2021, and 137/89 on April 14, 2021, indicate that he is merely at risk for having high blood pressure.[4] In addition, a laboratory report dated November 10, 2020, reveals that his cholesterol readings are all within the reference range. According to a medical record dated February 17, 2021, Alfaro is 5 feet, 5 inches tall and weighed 196 pounds, giving him a body mass index ("BMI") of 32.4, reflecting that he is obese.[5]

---

[4] According to the Centers for Disease Control and Prevention ("CDC"), a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

[5] According to the CDC, a BMI below 18.5 is underweight, a BMI between 18.5 and 24.9 is normal, a BMI between 25 and 29.9 is overweight, and a BMI of 30 or above is obese.

On December 2, 2020, Alfaro tested positive on a tuberculosis skin test, but he denied "symptoms of active TB infection" and refused latent tuberculosis prophylaxis.[6] Under these circumstances, Alfaro's declining the recommended treatment for latent tuberculosis, which currently is causing him no symptoms or acute illness, precludes him from relying on this condition as a basis for compassionate release. *See United States v. Bethel*, No. 3:08-CR-118, 2020 WL 7321372, at *3 (E.D. Tenn. Dec. 11, 2020) (denying compassionate release where the defendant refused to comply with his latent tuberculosis treatment, explaining that the court "will not find grounds for compassionate release created solely by a defendant's refusal to comply with recommended medical care"). Alfaro cannot be heard to raise concerns about potential complications from his condition but refuse to take the necessary steps to treat it.

In 2019, Alfaro was diagnosed with kidney cancer, and his right kidney was removed in an open right nephrectomy procedure in July 2019. In January 2020, he was diagnosed with stage 1 renal cell carcinoma. Alfaro's condition is monitored, and on January 28, 2020, Paul Zhang, M.D., observed that "[n]o further treatment [was] indicated per [National Comprehensive Cancer Network] guidelines." On February 11, 2020, Theresa Savant, F.N.P., noted that Alfaro was

---

[6] According to the CDC, tuberculosis is caused by a bacterium that attacks the body and usually focuses on the lungs. Not everyone infected with tuberculosis bacteria becomes sick. As a result, two tuberculosis-related conditions exist—latent tuberculosis and active tuberculosis. Unlike people with active tuberculosis, those with latent tuberculosis have no symptoms, do not feel sick, and cannot spread tuberculosis bacteria to others. People with latent tuberculosis may develop active tuberculosis, however, if they do not receive treatment for their infection. When monitored and well managed, tuberculosis does not amount to extraordinary and compelling reasons warranting compassionate release. *See United States v. Gardner*, No. 1:11-CR-87-HSO-JCG-1, 2021 WL 1110298, at *3 (S.D. Miss. Mar. 23, 2021) (finding that a defendant's chronic conditions of hepatitis C and tuberculosis did not amount to extraordinary and compelling reasons warranting release); *United States v. Sattar*, 467 F. Supp. 3d 152, 156 (S.D.N.Y. 2020) ("Although tuberculosis may be a risk factor for severe illness resulting from COVID-19, [the defendant] has not demonstrated that his tuberculosis, which is latent, is either not controlled currently or that it could not be addressed adequately at [the facility where he is housed].").

"advised of good review from oncology." According to Jacob Reddick, M.D. ("Dr. Reddick"), treatment for stage 1 renal cell carcinoma is removal of the kidney followed by close surveillance. Alfaro had CT scans on December 2, 2020, and April 14, 2021, to monitor his cancer. After his December 2, 2020, scan, medical staff noted that Alfaro was "clinically doing well." On April 14, 2021, Dr. Reddick remarked: "[Alfaro] recently visited with oncologist who recommended labs and CT scan as well as clinic follow-up in 6 months. Orders have been placed for the labs, diagnostics, and clinic follow-up." Thus, it appears that Alfaro's kidney condition is being well managed and monitored.

Moreover, Alfaro is classified as a BOP medical Care Level 2 inmate. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." Indeed, none of Alfaro's medical conditions are currently terminal (with an end of life trajectory within 18 months) or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433.

The court acknowledges that, according to the CDC website, some of Alfaro's underlying medical conditions—Type 2 diabetes, hypertension, and obesity—can make him more likely to become severely ill should he contract COVID-19; nonetheless, such commonplace afflictions do not make Alfaro's case "extraordinary." *See id*. at 434. According to the CDC, 42.5% of the adult population in the United States is obese and 73.6% is overweight. Further, 34.2 million

9

people in the United States, approximately 10.5% of the population, have diabetes. Of those, 90 to 95% have Type 2 diabetes. In addition, 45% of the adults in the United States (108 million) have hypertension and more than 12% (29 million) have high cholesterol.

Due to their prevalence, obesity, diabetes, hypertension, and hyperlipidemia cannot be deemed "extraordinary" in order to merit compassionate release. *See United States v. Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year-old woman who was obese with a body mass index of 36); *Thompson*, 984 F.3d at 434 (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *United States v. Hodgin*, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *3 (D.S.D. Mar. 11, 2021) (denying compassionate release to inmate who suffers from kidney disease, Type 2 diabetes, hypertension, hyperlipidemia, arthritis, and several other medical conditions); *United States v. Williams*, No. CR 15-83-SDD-EWD, 2021 WL 414825, at *3 (M.D. La. Feb. 5, 2021) (denying compassionate release to inmate with Type 2 diabetes and obesity because there was no evidence these conditions had diminished his ability to provide self-care within the facility); *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. January 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that obesity—alone or even paired with other medical conditions—does not provide adequate grounds for compassionate release"); *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *2 (E.D. La. Dec. 22, 2020) (finding that defendant's morbid obesity did not rise to the level of an extraordinary and compelling circumstance that would justify his early release);

10

*United States v. Cotto*, No. CV 16-36, 2020 WL 5761192, at *2 (E.D. La. Sept. 28, 2020) (recognizing the seriousness of diabetes and obesity but denying compassionate release because inmate had not shown that he was unable to take care of himself within the confines of the facility or that the BOP could not manage his medical conditions appropriately in view of medical records showing that he was being administered the necessary care); *United States v. Dressen*, No. 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) (denying compassionate release because the defendant did not identify "how his Type 2 diabetes prevents him from providing self-care in a correctional facility setting or how it amounts to extraordinary and compelling circumstances"); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition that may increase his risk for severe illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for compassionate release); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted"); *United States v. Jeffers*, 466 F. Supp. 3d 999, 1007 (N.D. Iowa 2020) (finding that the defendant had not demonstrated extraordinary and compelling circumstances when his diabetes and hypertension were controlled, monitored, and managed by the BOP).

According to the CDC, adults with cancer can be more likely to become severely ill from COVID-19. Nevertheless, a cancer diagnosis does not necessarily rise to the level of extraordinary and compelling circumstances, especially when the cancer is being closely monitored and managed. *See United States v. Jameel*, No. 2:13CR098 (RCY), 2021 WL 1784626, at *5 (E.D. Va. May 5, 2021) (finding that a defendant diagnosed with papillary thyroid cancer, who had a thyroidectomy, had not established extraordinary and compelling circumstances); *United States v. Green*, No. 3:17-CR-00189, 2021 WL 1020412, at *6 (S.D. Ohio Mar. 17, 2021) (finding that a defendant who claimed to suffer from prostate cancer for which he was undergoing chemotherapy had not established "extraordinary and compelling" reasons warranting compassionate release); *United States v. Skrine*, No. 2:15-CR-160, 2021 WL 71233, at *4 (W.D. Pa. Jan. 8, 2021) (denying compassionate release to a defendant who suffered from stage 4 liver cancer, finding that he had not established extraordinary and compelling circumstances).

In this instance, Alfaro's BOP records reveal that he is housed in general population, has no medical restrictions, has regular duty work assignments, and is cleared for food service. His medical problems do not appear to limit his ability to provide self-care within the correctional facility and are, in large part, controlled by medication. Thus, Alfaro has failed to establish the existence of medical conditions that would constitute extraordinary and compelling reasons to reduce his sentence.

D. Other Reasons

Alfaro also seeks compassionate release due to his post-sentence rehabilitation and the presence of COVID-19 in prison.

1. Rehabilitation

Alfaro maintains that his post-sentence rehabilitation, evidenced by the courses and programs he has completed, establishes an extraordinary and compelling reason for compassionate release. Although Alfaro provides the court with a list of commendable achievements, he has not presented sufficient grounds for compassionate release. While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act).

### 2. COVID-19

Alfaro also expresses concerns regarding the spread of COVID-19 among the prison population. Nevertheless, as of June 30, 2021, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 1,762) at CI Giles W. Dalby as having confirmed positive cases of COVID-19, 97 inmates who have recovered, and 3 inmates who succumbed to the disease. Thus, it appears that the facility where Alfaro is housed is handling the outbreak appropriately and providing adequate medical care.

Although Alfaro expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Alfaro, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F.

14

Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. To date, the BOP has administered approximately 193,220 doses of the vaccine. In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19. *See United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19");

*United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection."); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021). Indeed, according to Alfaro's BOP medical records, he received the Johnson & Johnson/Janssen vaccine on April 8, 2021. Therefore, Alfaro has failed to establish that a medical condition or other reasons exist that would constitute extraordinary and compelling reasons to warrant his release from imprisonment.

Moreover, it is well settled that "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct and has a criminal history, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94; *accord Keys*, 846 F. App'x at 276 (finding that Defendant's argument that the court gave too much weight to his criminal history, "amount[ed] to a mere disagreement with the court's balancing of the § 3553(a) factors, which is not a sufficient ground for reversal."). In exercising its discretion, the court finds that Alfaro has failed to establish that any reasons exist that would constitute extraordinary and compelling reasons to release him from prison.

E.     Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*,

___ F. App'x ___, No. 20-51017, 2021 WL 2549013, at *1 (5th Cir. Jun. 21, 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94. Alfaro's offense of conviction entails his participation in a large-scale, drug-trafficking conspiracy that distributed more than 500 grams of methamphetamine imported from Mexico. Alfaro was a member of the drug trafficking organization which had ties to the Knights Templar Cartel ("Los Caballeros Templarios") in Mexico, an affiliate of the La Familia Cartel. As part of the conspiracy, coconspirators received liquid methamphetamine from Alfaro and coconspirators that had been imported from Mexico in truck batteries, converted the liquid methamphetamine into its crystal form, and distributed the methamphetamine in the Eastern District of Texas and elsewhere. Alfaro received and stored drugs and drug proceeds at his residence and coordinated weekly shipments of currency to Mexico. On September 14, 2012, investigators with the Denton Police Department executed a search warrant at Alfaro's residence where they discovered more than 950 grams of methamphetamine (actual), a small amount of cocaine, a Colt, Model 1911, .45 caliber automatic pistol, an H&R, Model 732, .32 caliber revolver, a Bushmaster AR-15 .223 rifle, ammunition, and more than $48,000.00 in United States currency.

Alfaro's criminal history includes prior convictions for terroristic threat that involved him threatening a neighbor at gunpoint, driving while intoxicated (2), and transporting an undocumented alien within the United States for financial gain by means of a motor vehicle. Alfaro failed to comply with a prior term of probation. Moreover, he was previously deported to Mexico upon the expiration of a prior term of supervised release. According to Probation, he

17

is currently illegally present in the United States and there is an active Immigration and Customs Enforcement detainer pending against him. Furthermore, Alfaro has a history of alcohol abuse. In view of the nature and circumstances of his offense of conviction, his criminal history, his previous deportation and illegal status, and his history of alcohol abuse, the court cannot conclude that Alfaro's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In addition, granting Alfaro compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Alfaro after he has served only 103 months (or approximately 51.5%) of his 200-month sentence would similarly minimize the impact of his crime

and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Alfaro's track record is similarly a poor one. There is no reason to believe that Alfaro would not revert to his prior drug dealing activities as well as his unlawful possession of firearms if released from prison at this time.

III. Conclusion

In sum, Alfaro has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Alfaro's Emergency Motion for Compassionate Release (#798) is DENIED.

SIGNED at Beaumont, Texas, this 4th day of July, 2021.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE