| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:12-CR-252(1) |
| | § | |
| MIGUEL ANGEL ALFARO | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Miguel Angel Alfaro's ("Alfaro") *pro se* Motion for Hardship Credit for Hard Time Served (#805), wherein he requests the court to grant him two days of sentence credit for every one day he has served while "locked-down" due to Coronovirus Disease 19 ("COVID-19"). Having considered the motion, the record, and the applicable law, the court is of the opinion that Alfaro's motion should be denied.

I.   Background

On August 13, 2013, Alfaro was named in a single-count Information, charging him with Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 846. On August 14, 2013, Alfaro pleaded guilty to Count One of the Information. On April 14, 2014, the court sentenced him to 200 months' imprisonment, to be followed by a three-year term of supervised release. On May 20, 2014, Alfaro filed a notice of appeal to the United States Court of Appeals for the Fifth Circuit, which the court dismissed.

On July 30, 2021, Alfaro filed the instant motion for Hardship Credit for Hard Time Served (#805), wherein he alleges that Correctional Institution Giles W. Dalby ("CI Giles W. Dalby"), located in Post, Texas, is "a hard time detention facility" because of lock-down measures imposed to prevent the spread of COVID-19.[1] Specifically, Alfaro claims the following lock-down

---

[1] CI Giles W. Dalby is a low-security federal correctional institution.

measures at CI Giles W. Dalby violate prisoners' rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution:

> 1. [CI] Giles W. Dalby is currently operating a communal segregation prison limiting liberty interest[s] afforded to the inmates in general population.
>
> 2. The access to recreational services is limited to only [sic] times per week and at times less than one hour each time.  At times several days can pass without any recreation at all making the facility intolerable.
>
> 3. Dietary needs of inmates are below federal prison standards and "meals" can be "cruel."  Inmates are having to use discolored and brown water from sinks located in the cells to drink due to long lockdown hours which is tolerable for one or two days but cruel and unusual under the eight[h] amendment beyond that.
>
> 4. The time an inmate in general population spends in his cell can at times be in excess of 22 hours in a single-day period, which can amount to solitary confinement and serious and significant deprivation of liberty.
>
> 5. The lack of movement where an inmate who is not in protection segregation, isolated segregation, administrative segregation, or otherwise disciplinary segregation is subjected to the aforementioned treatment creating a disproportionate punishment to offense.
>
> 6. Personal hygiene is significantly degraded which depends on the inmate population which is transient in nature to maintain cleanliness of the facility and common illness, which are easily avoidable, can become a problem that the already limited medical staff is unable to suppress before the entirety of the inmates is affected.  During normal operations, inmates have the opportunity to utilize hair care to cut and maintain our hair but due to the lockdown we have been unable to even cut our hair.
>
> 7. Medical care is scarce since the beginning of the lockdown due to Covid-19 in March of 2020.  It can take months to see medical staff, including dental, medical, and mental health doctors.  We have not had an optometrist since this lockdown began and many inmates are in need of glasses to see.  After applying to see any medical staff during this pandemic and continuously awaiting for a response, if any, confined to your cell up to 22 hours out of a 24 hour day easily depletes your mental health.  This situation has created a serious issue for those inmates dealing with depression and anxiety.

Thus, Alfaro requests that the court grant him two days of credit for every one day he has served during the time he has been "locked-down" in CI Giles W. Dalby due to COVID-19.

II.     Analysis

The court's authority to reduce or modify a sentence is limited once a sentence of imprisonment has been imposed. *Dillon v. United States*, 560 U.S. 817, 819 (2010); *United States v. Varner*, 948 F.3d 250, 253 (5th Cir. 2020); *United States v. Banks*, 770 F.3d 346, 348 (5th Cir. 2014); *United States v. Hernandez*, 645 F.3d 709, 711 (5th Cir. 2011); *United States v. Alonzo*, 516 F. Supp. 3d 623, 632 (E.D. Tex. 2021). Pursuant to 18 U.S.C. § 3582(c), a district court is authorized to modify a previously imposed term of imprisonment only under the following circumstances: (1) when the court receives a motion from the Director of the Bureau of Prisons ("BOP"), or under certain circumstances, a motion from the defendant, indicating that there are extraordinary and compelling reasons warranting a reduction and that reduction is consistent with applicable policy statements issued by the Sentencing Commission; (2) when the district court, pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure, acting within 14 days after the imposition of sentence, wishes to correct an arithmetical, technical, or other clear error identified in a previously imposed sentence; (3) when the defendant has provided substantial assistance and the government moves for a sentence reduction; or (4) when the defendant has been sentenced to a term of imprisonment based upon a sentencing range that has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c); *see United States v. Lopez*, 989 F.3d 327, 332 (5th Cir. 2021) ("Section 3582(c)(2) permits the discretionary modification of a defendant's sentence 'in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant

to 28 U.S.C. [§] 994(o),' so long as the 'reduction is consistent with applicable policy statements.'"); *Banks*, 770 F.3d at 348; *United States v. Meza*, 620 F.3d 505, 507 (5th Cir. 2010).

Alfaro fails to identify a statutory basis by which the court may credit him for two days served for every day he spends incarcerated. Other courts across the nation have similarly rejected such a claim for lack of a cognizable legal basis. *See, e.g.*, *United States v. Green*, No. CR415-204, 2021 WL 1929552, at *1 (S.D. Ga. May 13, 2021) (finding no authority to support defendant's motion for "hardship credit for hard time served"); *United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021) (same); *United States v. Brown*, No. 2:14-CR-130, 2021 WL 1725545, at *1 (E.D. Tenn. April 30, 2021) (same); *United States v. Barnes*, No. CR 113-199, 2021 WL 1395199, at *1 (S.D. Ga. Apr. 13, 2021) (same).

A. <u>Compassionate Release</u>

To the extent that Alfaro's motion could be construed as a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A), such relief is not warranted. The First Step Act allows a defendant, who has fully exhausted his administrative remedies, to file a motion for compassionate release based on extraordinary and compelling reasons. When a defendant moves for compassionate release he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id*. at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission

("Commission")]." *Id.* at 392. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[2] *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 846 F. App'x 275 (2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Alfaro neither asserts nor provides documentation showing that he exhausted his administrative remedies with the BOP prior to filing the instant motion. *See, e.g., Barnes*, 2021 WL 1395199, at *1 (holding the defendant did not show that she had exhausted her administrative remedies, and thus, the court would not consider her motion under § 3582(c)(1)(A) for "hard time" credit). Moreover, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment. Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its

---

[2] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

commentary, describes what reasons qualify as extraordinary and compelling.[3]  However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[4]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.  *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Nevertheless, while recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently "extraordinary" and "compelling" to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).  A review of dictionary definitions also sheds light on the meaning of these terms.  The word "extraordinary" is defined as "going beyond what

---

[3] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[4] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

is usual, regular, or customary . . . exceptional to a very marked extent." *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see Mitchell*, 2021 WL 1827202, at *2 ("'Extraordinary' is defined as 'exceptional to a very marked extent.'" (quoting WEBSTER'S THIRD INTERNATIONAL DICTIONARY, UNABRIDGED (2020))). "Compelling" is defined as "forceful . . . demanding attention . . . convincing." *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see Mitchell*, 2021 WL 1827202, at *2 ("'Compelling' is defined as 'tending to convince or convert by or as if by forcefulness of evidence.'" (quoting WEBSTER'S THIRD INTERNATIONAL DICTIONARY, UNABRIDGED (2020))). "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'" *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020)).

In his motion, Alfaro raises concerns about the restrictions imposed on all the inmates housed at CI Giles W. Dalby, which, at present, totals 946 individuals. Alfaro "does not describe any conditions or unique vulnerabilities that apply specifically to him. He, in essence, contends that relief is warranted simply because he is a prisoner at CI Giles W. Dalby." *Mitchell*, 2021 WL 1827202, at *1. Nonetheless, "the Court must consider every prisoner individually and should be cautious about making blanket pronouncements." *United States v. Chavez,* No. 3:18-CR-0426-B-11, 2020 WL 4500633, at *3 (N.D. Tex. Aug. 5, 2020) (quoting *United States v. Delgado*, No. 3:17-CR-242-B (01), 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020)); *see United States v. Ashley*, No. CR 17-00282-KD-B-1, 2020 WL 7771215, at *4 (S.D. Ala. Dec. 30,

2020) (holding that, in considering a motion for compassionate release, the court must take an "individualized and particularized review" of the defendant's characteristics (citing *United States v. Tobias*, No. CR 19-143 (BAH), 2020 WL 4673414, at *5 (D.D.C. Aug. 12, 2020); *United States v. Brown*, No. 13-CR-00030 (ESH), 2020 WL 4346911, at *3 (D.D.C. July 29, 2020); *United States v. Joaseus*, No. 9:16-CR-80011-ROSENBERG, 2020 WL 3895087, at *2 (S.D. Fla. July 10, 2020))).

Alfaro seemingly fails to recognize that COVID-19 has disrupted everyone's daily routines, both in and outside of prison. According to the BOP's website, the "BOP recognizes the importance for inmates to maintain relationships with friends and family. During modified operations in response to COVID-19, the BOP suspended social visitation, however, inmates were afforded 500 (vs. 300) telephone minutes per month at no charge to help compensate for the suspension of social visits." Furthermore, in an attempt to keep inmates and staff safe, the BOP has modified its operations to allow "Institutions with active COVID-19 cases [to] make exceptions to [] programming requirements for the safety of inmates and staff." Additionally, the BOP's website notes that "inmates are limited in their movements to prevent congregate gathering and maximize social distancing"; however, "inmate movement in small numbers is authorized for the following purposes: commissary, laundry, showers three times each week, and telephone." *See United States v. Dodge*, No. CR 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) ("The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person."); *see also United States v. Wright*, No.

17-CR-0301, 2020 WL 7334412, at *5 (D. Minn. Dec. 14, 2020) ("It is undisputed that the BOP has implemented numerous measures to prevent and mitigate COVID-19 outbreaks within its facilities."). The safety measures that have been implemented benefit Alfaro, other inmates, and BOP staff members during the pandemic. Indeed, as of April 26, 2022, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 946) at CI Giles W. Dalby as having confirmed positive cases of COVID-19 and 120 inmates who have recovered. Hence, the mitigation efforts appear to have been successful, and the consequential inconveniences presented by the BOP's modified operations on Alfaro's daily activities do not create an extraordinary and compelling reason to reduce his sentence.

      B.    <u>Computation of Sentence Credit</u>

To the extent that Alfaro argues that the BOP has incorrectly calculated his time-served credit, the Court lacks jurisdiction to consider his motion. *See, e.g., Cazun-Menendez v. United States*, No. 3:21-CV-01233-N (BT), 2021 WL 3477351, at *1 (N.D. Tex. July 2, 2021), *adopted by* No. 3:21-CV-01233-N (BT), 2021 WL 3473265 (N.D. Tex. Aug. 6, 2021). The proper procedural vehicle for such a request is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *United States v. Rodriguez-Falcon*, 710 F. App'x 242, 243 (5th Cir. 2018); *Robertson v. Werlich*, 667 F. App'x 853, 854 (5th Cir. 2016); *Arreola-Amaya v. Fed. Bureau of Prisons*, 623 F. App'x 710, 710 (5th Cir. 2015); *see Green*, 2021 WL 1929552, at *2 ("[T]he proper procedure for Defendant to mount a judicial challenge to the BOP's decision is to file a civil action under 28 U.S.C. § 2241 in the district and division of her confinement."); *United States v. King*, No. CR 2:17-823-2, 2021 WL 1550307, at *1 (S.D. Tex. Apr. 19, 2021) (holding that defendant's motion for hardship credit for hard time served should be brought pursuant to a

§ 2241 petition in that court where defendant is incarcerated after first exhausting her administrative remedies); *Alzamora v. United States*, No. 1:14CV384, 2017 WL 4155099, at *3 (E.D. Tex. Sept. 19, 2017).  A federal prisoner, however, must exhaust his administrative remedies before seeking habeas corpus relief in federal court under § 2241.  *United States v. Aparicio*, 963 F.3d 470, 478 (5th Cir.), *cert. denied sub nom. Aparicio-Leon v. United States*, 141 S. Ct. 435 (2020); *Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018); *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017) (citing *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir.), *cert. denied*, 568 U.S. 993 (2012)), *cert. denied*, 138 S. Ct. 1035 (2018); *United States v. Setser*, 607 F.3d 128, 133 n.3 (5th Cir. 2010), *aff'd*, 566 U.S. 231 (2011).  This exhaustion requirement applies to the computation of prior custody sentence credit.  *See, e.g.*, *Aparicio*, 963 F.3d at 478; *Smith v. McConnell*, 950 F.3d 285, 287 (5th Cir. 2020); *Falcetta*, 734 F. App'x at 287; *Rodriguez-Falcon*, 710 F. App'x at 243; *Smith v. Upton*, 477 F. App'x 289, 289 (5th Cir. 2012).  Exceptions are warranted only in "extraordinary circumstances," such as where administrative remedies are unavailable or "wholly inappropriate" or where the petitioner has demonstrated the futility of administrative review.  *Fillingham*, 867 F.3d at 535; *Gallegos-Hernandez*, 688 F.3d at 194; *Schipke v. Van Buren*, 239 F. App'x 85, 86 (5th Cir. 2007).  Alfaro, again, fails to demonstrate that he exhausted his remedies with the BOP prior to filing the present motion.

Moreover, under 18 U.S.C. § 3585(b), a federal district court does not have the authority to compute the amount of credit for time served to be accorded to a defendant.  *See United States v. Wilson*, 503 U.S. 329, 334-35 (1992); *United States v. Taylor*, 973 F.3d 414, 418 (5th Cir. 2020); *Smith*, 950 F.3d at 288; *Aparicio*, 963 F.3d at 478; *In re U.S. Bureau of Prisons*, 918 F.3d

431, 439 (5th Cir. 2019); *United States v. Hankton*, 875 F.3d 786, 792 (5th Cir. 2017). Indeed, "[d]istrict courts lack the jurisdiction to compute prior-custody credit at sentencing." *United States v. Wynder*, 659 F. App'x 761, 763 (5th Cir. 2016); *accord Wilson*, 503 U.S. at 333 ("[C]omputation of the [prior-custody] credit must occur after the defendant begins his sentence."); *In re U.S. Bureau of Prisons*, 918 F.3d at 439 ("Because the district court lacks the authority to award or deny credit, the BOP is not bound by its decision."). Rather, the Attorney General, acting through the BOP, is responsible for administering the sentence and determining prior-custody credit for a defendant. *See Wilson*, 503 U.S. at 335; *Aparicio*, 963 F.3d at 478; *Smith*, 950 F.3d at 288; *United States v. Rodriguez-Falcon*, 710 F. App'x 242, 243 (5th Cir. 2018); *Hankton*, 875 F.3d at 792; *Green*, 2021 WL 1929552, at *1 (denying defendant's motion for hard time credit in part because "the BOP, not the Court, possesses the authority to determine the manner in which credit for prior custody is applied toward a federal sentence"); *Barnes*, 2021 WL 1395199, at *1 ("[M]atters concerning length of sentence determinations are better directed to the BOP, not this Court."). Accordingly, the court is without jurisdiction to consider Alfaro's request to adjust the BOP's calculation of his sentence.

III. Conclusion

In sum, the court does not have the authority to alter Alfaro's sentence. *See Varner*, 948 F.3d at 253 (finding that the district court lacked jurisdiction to entertain a motion to correct or change a sentence unless it fell into one of the recognized categories of post-conviction motions set forth in FED. R. CRIM. P. 35 or 36 or in 18 U.S.C. § 3582(c)); *United States v. Castelan*, 73 F. App'x 80, at *1 (5th Cir. 2003) (holding that "[t]he district court is prohibited from modifying a term of imprisonment once it has been imposed except in certain limited circumstances") (citing

*United States v. Early*, 27 F.3d 140, 141-42 (5th Cir. 1994)); *accord United States v. Jones*, 962 F.3d 1290, 1297 (11th Cir. 2020) ("A district court lacks the inherent authority to modify a term of imprisonment."); *United States v. Ellis*, No. CR 15-124, 2020 WL 5073562, at *1 (E.D. La. Aug. 26, 2020) (citing *Early*, 27 F.3d at 141-42). Alfaro has not demonstrated any extraordinary and compelling reasons to release him from custody or accord him additional sentence credit. Moreover, the court is without jurisdiction to calculate his time-served credit. In any event, Alfaro has failed to exhaust his administrative remedies, which is a prerequisite for seeking relief in court regarding any policies or procedures of the BOP. For these reasons, Alfaro's *pro se* Motion for Hardship Credit for Hard Time Served (#805) is DENIED.

SIGNED at Beaumont, Texas, this 26th day of April, 2022.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE