UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:12-CR-252-SDJ |
| | § | |
| MIGUEL ANGEL ALFARO (1) | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court are Defendant Miguel Alfaro's Motions for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. #812, #813). The motions are substantively identical. The Government opposes these motions. (Dkt. #817). Having considered the motions, the record, and the applicable law, Alfaro's motions are **DENIED**.

**I. BACKGROUND**

On April 16, 2014, Alfaro was sentenced to a 200-month term of imprisonment with five years of supervised release. (Dkt. #414). He pleaded guilty to conspiracy to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. (Dkt. #271). As part of this conspiracy, Alfaro "assisted individuals who distributed and possessed with intent to distribute methamphetamine. Additionally, he received methamphetamine from some co-conspirators and distributed methamphetamine to other co-conspirators." (Dkt. #272 ¶ 7). In total, the conspiracy involved more than 500 grams of methamphetamine. (Dkt. #272 ¶ 6). A little over halfway through his sentence, Alfaro filed these motions for compassionate release, citing to elevated health risks related to his potential exposure to COVID-19 during the pandemic because of his age and several medical conditions: hypertension,

diabetes, and a heart condition. (Dkt. #812 at 4–12). Alfaro also states that he is a cancer survivor, and his post-operative treatment has been inadequate. (Dkt. #812 at 6–8). For these reasons, Alfaro requests that the Court reduce his sentence, presumably to time served, and order him released from prison.

## II. Legal Standards

### A. Jurisdiction over Sentence-Reduction Motions

Under the "rule of finality," "federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed." *Freeman v. United States*, 564 U.S. 522, 526, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011) (cleaned up). That is so because a judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment," which may be modified in only "limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010). Indeed, the Fifth Circuit has explained that "[a]bsent jurisdiction conferred by statute, district courts lack power to consider [post-judgment] claims." *United States v. Varner*, 948 F.3d 250, 253 (5th Cir. 2020) (quoting *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)); *see also Eberhart v. United States*, 546 U.S. 12, 17, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam) (a "basic principle of judicial process" is that "once a final [criminal] judgment is issued and the court of appeals considers a case, a district court has no power to act on it further").

The "limited circumstances" in which a defendant may invoke the district court's[1] jurisdiction are through (1) compassionate-release motions;[2] (2) motions for sentence reduction based on a change in the sentencing guidelines;[3] (3) Rule 35(a) motions to correct clear error within fourteen days of sentencing;[4] (4) Rule 35(b) motions for sentence reduction based on substantial assistance;[5] (5) Rule 36 motions to correct clerical errors;[6] (6) habeas motions;[7] or (7) any other motion "expressly permitted by statute."[8] *Varner,* 948 F.3d at 253–54. That's it. If a Defendant seeks other relief, they should specifically identify where that relief is expressly permitted by statute.

## B. Motions for Compassionate Release

Compassionate-release motions are governed by 18 U.S.C. § 3582(c)(1)(A)(i). They can be filed by either the Director of the Bureau of Prisons ("BOP") or the defendant. Under this section, the Court may "reduce the term of imprisonment" and "impose a term of probation or supervised release with or without conditions that

---

[1] A defendant may invoke the jurisdiction of the courts of appeals through direct appeal of their term of imprisonment under 18 U.S.C. § 3742.

[2] 18 U.S.C. § 3582(c)(1)(A).

[3] 18 U.S.C. § 3582(c)(2).

[4] 18 U.S.C. § 3582(c)(1)(B); *see also* FED. R. CRIM. P. 35(a).

[5] *Id.*; *see also* FED. R. CRIM. P. 35(b).

[6] FED. R. CRIM. P. 36.

[7] 28 U.S.C. § 2255.

[8] 18 U.S.C. § 3582(c)(1)(B).

does not exceed the unserved portion of the original term of imprisonment[.]" *Id.* § 3582(c)(1)(A)(i). The standard for granting relief is exacting. The court must find that (1) "'extraordinary and compelling reasons' justify a sentence reduction"; (2) such a reduction "must be consistent with applicable policy statements issued by the Sentencing Commission"; and (3) "early release would be consistent with the sentencing factors in § 3553(a)." *United States v. Clark*, No. 24-10020, 2024 WL 4930383, at *1 (5th Cir. Dec. 2, 2024).

So what constitute "extraordinary and compelling reasons"? Congress chose not to elaborate further. Instead, it delegated the authority to do so to the Sentencing Commission. *See* 28 U.S.C. § 994(t) (directing the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). In so doing, Congress "provided just one restriction: 'Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021) (quoting 28 U.S.C. § 994(t)).

Under this authority, the Sentencing Commission promulgated U.S.S.G. § 1B1.13. As it stands now, there are six "extraordinary and compelling reasons" that could warrant sentence reduction: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant is a victim of abuse; (5) other reasons that are "similar in gravity" to reasons one through four; and (6) whether the defendant has an unusually long sentence. U.S.S.G.

§ 1B1.13(b)(1)–(6). This section binds district courts because Section 3582 requires sentence reductions to be "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (finding that Congress intended the Sentencing Commission's policy statements "to be binding in § 3582(c) proceedings"). And the 2023 amendments[9] made clear that U.S.S.G. § 1B1.13 applies to motions filed by either "the Director of the [BOP] or the defendant."[10] U.S.S.G. § 1B1.13(a); *see also United States v. Jean*, 108 F.4th 275, 290 (5th Cir. 2024) (noting that "district courts are now guided by the November 1, 2023 Amendments in future cases"), *abrogated on other grounds by United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025).

But the analysis doesn't end there. Even if the defendant shows extraordinary and compelling reasons for granting relief, several other hurdles remain. For example, the court must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. §

---

[9] Amendments to the Sent'g Guidelines (U.S. Sent'g Comm'n Nov. 1, 2023).

[10] Before the 2023 amendments to the Sentencing Guidelines, U.S.S.G. § 1B1.13(a) was limited to motions "of the Director of the [BOP]." The Fifth Circuit, among many others, interpreted this omission to suggest that U.S.S.G. § 1B1.13 did not apply to compassionate-release motions filed by defendants. *United States v. Shkambi*, 993 F.3d 388, 392–93 (5th Cir. 2021); *see also United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). The amended guidelines allow for motions "of the Director of the [BOP] *or the defendant*," which clarified this previous confusion.

1B1.13(a)(2). The factors under Section 3142(g) align with the sentencing factors under 18 U.S.C. § 3553(a),[11] which must also be considered by the court:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

> (2) the need for the sentence imposed

>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

>> (B) to afford adequate deterrence to criminal conduct;

>> (C) to protect the public from further crimes of the defendant; and

>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). The district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case[.]'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion ... where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

---

[11] For brevity, the Court includes the language of only 18 U.S.C. § 3553(a), which is substantively identical to 18 U.S.C. § 3142(g).

Based on Alfaro's arguments, the Court believes that he seeks to invoke his medical conditions and COVID-19 as extraordinary and compelling reasons for relief.

## C. Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate-release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D).

First, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 292–93 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging

process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release[.]" *United States v. Love*, 853 F.App'x 986, 987 (5th Cir. 2021) (quotations omitted).

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have rejected as insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

8

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status," must put them "at increased risk of suffering severe medical complications or death[.]" *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[12] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19); also citing *United States v. Rodriguez*, 27 F.4th 1097, 1098–1100 (5th Cir. 2022) (denying relief where COVID-19-fearing movant suffered from heart failure)). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594,

---

[12] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

597 (3d Cir. 2020); *see also Koons,* 455 F.Supp.3d at 290) ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP.").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: Both international and domestic health authorities, including the World Health Organization,[13] the United States Centers for Disease Control and Prevention,[14] and the U.S. Federal Government,[15] have made clear that the COVID-19 pandemic has ended.[16] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

---

[13] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[14] *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[15] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[16] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination." (quotations omitted)).

**D. Exhaustion Requirement Under 18 U.S.C. § 3582(c)(1)(A)**

Section 3582(c)(1)(A) imposes exhaustion requirements for compassionate-release requests from a defendant: they must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Although this requirement is mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, 141 S.Ct. 920 (2020). And "mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022). Thus, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *Id.*

## III. DISCUSSION

To begin with, the Government concedes that Alfaro has met the exhaustion requirements. (Dkt. #817 at 2–3). The Court agrees and finds that Alfaro has exhausted his administrative remedies.

Turning to Alfaro's motions, his requests for compassionate release fall under U.S.S.G. § 1B1.13(b)(1)(B)–(D).

Under Subsection 1B1.13(b)(1)(B), Alfaro argues that he "is utterly reliant upon the BOP/Fort Dix to provide him with" necessary post-operative treatment for his kidney after having surgery for kidney cancer. (Dkt. #812 at 8). Because they have

not provided him with "access to medical monitoring as prescribed by his Oncologist," (Dkt. #812 at 6), he has an "inability to provide self-care," (Dkt. #812 at 8).

But a defendant's medical conditions aren't extraordinary and compelling when they are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care[.]'" *Love*, 853 F.App'x at 987. As the Government notes in response, "Alfaro is classified as Care Level 2 'stable chronic care.' Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every six months. Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring." (Dkt. #817 at 3). Based on his medical records, "FCI Fort Dix is providing Alfaro with appropriate care to manage his medical conditions." (Dkt. #817 at 3). The Court agrees with the Government and finds that Alfaro's post-operative-treatment protocol is sufficient. And for these same reasons, Alfaro's claims under Subsection 1B1.13(b)(1)(C) fail too.

But Alfaro's claims under Subsection 1B1.13(b)(1)(C) fail for additional reasons. In particular, his claims fail because Alfaro has provided no proof of how his medical conditions are deteriorating. *Ani*, 2024 WL 50775, at *4; *Dessure-Outlaw*, 2024 WL 83327, at *2. What is more, Judge Crone already found in response to a previous motion for compassionate release that Alfaro's medical conditions did not constitute extraordinary and compelling reasons for relief. (Dkt. #804). Because Alfaro raises no new medical conditions in this motion, Judge Crone's findings and conclusions there apply equally here.

12

Finally, Alfaro claims that his hypertension, diabetes, and heart condition put him at a higher risk of injury or death given the COVID-19 pandemic, which constitutes an extraordinary and compelling reason to reduce his sentence. (Dkt. #812 at 4–12). But the Fifth Circuit has repeatedly denied motions citing similar health concerns and the COVID-19 pandemic. *See, e.g.*, *Thompson*, 984 F.3d at 432–34 (denying relief to a hypertensive stroke survivor concerned by COVID-19); *Rodriguez*, 27 F.4th at 1098–1100 (denying relief where COVID-19-fearing movant suffered from heart failure). Even if that weren't the case, the COVID-19 pandemic has ended and no longer constitutes an extraordinary and compelling reason for compassionate release. *See supra* notes 13–16 and accompanying text.

Alfaro has thus failed to prove that his medical conditions constitute extraordinary and compelling reasons to support his requested sentence reduction.

Setting the sentencing guidelines aside, the Court independently finds that the sentencing factors under 18 U.S.C. § 3553(a) support denying Alfaro's motion. *Rollins*, 53 F.4th at 359. Judge Crone's findings in this case make clear why his motion must be denied:

> Alfaro's offense of conviction entails his participation in a large-scale, drug-trafficking conspiracy that distributed more than 500 grams of methamphetamine imported from Mexico. Alfaro was a member of the drug trafficking organization which had ties to the Knights Templar Cartel ("Los Caballeros Templarios") in Mexico, an affiliate of the La Familia Cartel. As part of the conspiracy, coconspirators received liquid methamphetamine from Alfaro and coconspirators that had been imported from Mexico in truck batteries, converted the liquid methamphetamine into its crystal form, and distributed the methamphetamine in the Eastern District of Texas and elsewhere. Alfaro received and stored drugs and drug proceeds at his residence and coordinated weekly shipments of currency to Mexico. On September 14,

2012, investigators with the Denton Police Department executed a search warrant at Alfaro's residence where they discovered more than 950 grams of methamphetamine (actual), a small amount of cocaine, a Colt, Model 1911, .45 caliber automatic pistol, an H&R, Model 732, .32 caliber revolver, a Bushmaster AR-15 .223 rifle, ammunition, and more than $48,000.00 in United States currency.

Alfaro's criminal history includes prior convictions for terroristic threat that involved him threatening a neighbor at gunpoint, driving while intoxicated (2), and transporting an undocumented alien within the United States for financial gain by means of a motor vehicle. Alfaro failed to comply with a prior term of probation. Moreover, he was previously deported to Mexico upon the expiration of a prior term of supervised release. . . . Furthermore, Alfaro has a history of alcohol abuse.

(Dkt. #804 17–18). Granting Alfaro's request would not reflect the seriousness of his offense, promote respect for the law, or provide just punishment for his offense. His involvement in a drug-trafficking conspiracy with cartel ties, his possession of several firearms and illicit drugs, and his violent criminal history all counsel against early release to protect the public. Nor would an early release adequately deter future criminal conduct.

Because Alfaro has failed to show that there are extraordinary and compelling reasons to reduce his sentence, his motion must be denied. Even if Alfaro had made this showing, the Court would still find that his motion must be denied "after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693.

## IV. CONCLUSION

Defendants seeking compassionate release must show that (1) extraordinary and compelling reasons warrant a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction is warranted after consideration of the sentencing factors in

18 U.S.C. § 3553(a). Defendant Miguel Alfaro has failed to meet his burden for each requirement, and his Motions for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A), (Dkt. #812, #813), are **DENIED**.

**So ORDERED and SIGNED this 23rd day of January, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE